IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

PABLO RIVERA PEÑA

Debtor

CASE NO. 18-04009 (ESL)

CHAPTER 13

OPINION AND ORDER

There are four (4) pending contested matters which relate to a controversy that has turned vitriolic between Debtor and Energy Homes Corporation ("Energy"). The court may have engaged in a lack of ingenuity expecting that able counsel negotiate a business solution to the same. But, they have not. Thus, the court must address the pending issues, that is, (i) Debtor's request to withdraw consigned funds (dkt. #69, 74, 207) and the motion for summary judgment in relation thereto (dkt. #189), (ii) Debtor's request for sanctions against Energy and its counsel under Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927 and 11 U.S.C. § 105(a) (dkt. #101), (iii) Debtor's request for sanctions against Energy for alleged violation of the automatic stay (dkt. #102), (iv) Energy's motion to dismiss (dkt. #159), and the oppositions and replies thereto.

Prior to doing so, however, the court feels compelled to first address the concept of civility. The Hon. Bruce S. Mencher defined civility as: "[The] decent behavior and treatment characterized by generally accepted social behavior and politeness practiced toward those with whom we come into contact whether they be judge, lawyer, witness, or court personnel." Oquendo v. Costco Wholehouse Corp., 2020 WL 1698991, at *1 (D.P.R. 2020), aff'd sub nom., 857 F. App'x 9 (1st Cir. 2021), and aff'd sub nom., 857 F. App'x 9 (1st Cir. 2021), quoting Bruce S. Mencher, Civility: A Casualty of Modern Litigation? An Alert to the Bench and Bar, The Washington Lawyer, Sept.–Oct. 1993, at 19-20.

"To opposing counsel, a lawyer owes the duty of courtesy, candor in the pursuit of the truth, cooperation in all respects not inconsistent with the client's interests and scrupulous observance of all mutual understandings." Id., quoting American College of Trial Attorneys, Code of Trial Conduct, p. 1 (1994). "The lack of civility within the legal profession constitutes a

-1-

'societal problem, increased costs to the client, and the need for greater judicial leadership…' "

Id., quoting Jaen v. Coca-Cola Co., 157 F.R.D. 146, 152-53 (D.P.R. 1994), citing Mencher, *supra*.

In pertinent part, Canon 29 of the Puerto Rico Canons of Professional Ethics states that:

Clients, not lawyers, are the litigants. Any ill-feeling existing between clients should not influence counsel in their conduct and demeanor toward each other or toward litigants in the case. All personal matters between counsel should be scrupulously avoided. During the course of a trial it is improper to allude to the personal history or individual peculiarities or idiosyncrasies of opposing counsel. Personal colloquies between counsel which cause delay and provoke disputes should also be avoided.

It would be highly improper for a lawyer to make false imputations which affect the reputation and good name of a colleague. When there are serious grounds for complaint against colleagues, it is the duty of a lawyer to submit his charges to the competent authorities, using for that purpose the means provided by law.

Id., at *2, quoting 4 L.P.R.A. Ap. IX, § 29.

While the Puerto Rico Canons of Professional Ethics do not govern the conduct of attorneys in federal court, "the *raison d'etre* of both the Model Rules and the Puerto Rico Canons of Ethics is akin—to preserve the integrity of the legal profession." In re Jesus M. Rivera–Arvelo, 830 F. Supp. 665, 667, n. 5 (D.P.R. 1993). As such, courts in this District look to the Puerto Rico Canons of Professional Ethics and their interpretive jurisprudence for illustrative purposes. Oquendo, 2020 WL 1698991, at *2, citing Reed v. Seguros Triple-S, Inc., 1997 WL 711371, at *1 (D.P.R. 1997).

Counsel appearing in this case are competent and experienced. Yet, they have engaged in the use of intemperate language in their briefs when referring to each other's arguments. Particularly, Debtor's counsel. As stated, the Model Rules and the Puerto Rico Canons of Professional Ethics require attorneys to treat all persons involved in the legal process with respect. Respect and civility are key to maintaining the decorum of the judicial process. Zealousness in representing a client does not allow lack of courtesy to opposing counsel as such conduct diminishes the public trust in the judicial system. The existence of an adversarial system is not in

conflict with the responsibility of all appearing in a judicial process to act with respect and civility. Further, this court will not tolerate a deliberate disregard of civility.

Factual and Procedural Background

A.    Debtor's Bankruptcy Case

The Debtor filed a Chapter 13 petition on July 16, 2018. The amended Chapter 13 plan dated September 28, 2018 (dkt. #18) was confirmed on October 26, 2018 (dkt. #25). On August 1, 2020, Debtor filed a motion for post-confirmation modification of a plan dated August 1, 2019, which provides for payment of 100% of all allowed claims (dkt. #46). The same was granted on August 26, 2019 (dkt. #51).

Only three proofs of claim were filed in this case: Firstbank, Autoridad de Energía Eléctrica, and Reverse Mortgage Funding, LLC ("Reverse Mortgage"). On January 8, 2021, Reverse Mortgage filed a motion for relief from stay (dkt. #58) and the court granted the same (dkt. #62). The Debtor and his non-filing spouse are retired, and their income stems from Social Security Administration benefits which total $1,949.00 per month.

On March 12, 2024, the Chapter 13 trustee filed a report of plan completion and certification that a discharge order may be entered (dkt. #213) and, on March 13, 2024, filed a final report (dkt. #214). A discharge order was entered on April 16, 2024 (dkt. #215). Consequently, all standard bankruptcy matters have concluded.

B.    Controversy By and Between the Debtor and Energy

On May 21, 2019, Debtor amended schedules A/B and C to include a third-party claim against Universal Insurance Company ("Universal"). The claim was included in Schedule A/B in the amount of $22,610.48, of which $9,699.00 were claimed as exempt in Schedule C. The Debtor and Universal settled the claim for the scheduled amount. However, $7,536.82 would be paid to state court counsel as fees, plus $400.00 in expenses, leaving a balance of $14,673.66. The settlement was presented to the court on January 28, 2020 (dkt. #55) and approved on February 21, 2020 (dkt. #56). Universal consigned funds in the amount of $22,610.48 on February 9, 2021

(dkt. #64). On March 25, 2021, Debtor moved to withdraw the consigned funds (dkt. #69) and, on March 26, 2021, Energy filed an opposition to such withdrawal (dkt. #72).

Energy alleges in its opposition that Debtor contracted its services to repair damages caused by Hurricane María to Debtor's principal residence, and that such reparations were completed. Energy disclosed that Debtor had filed a claim before the Department of Consumer Affairs ("DACO" by its Spanish acronym) alleging that the repairs were not completed. This action was not disclosed by Debtor. Debtor voluntarily dismissed the DACO complaint, and a resolution was entered to such effects by DACO on February 25, 2021. Energy claims Debtor never informed that he was in bankruptcy. Energy prays the court to deny the request for withdrawal of the consigned funds as the debt with Energy was not disclosed and is nondischargeable. The amount owed to Energy is $14,673.66.

Thereafter, in March 2021, Debtor amended Schedules A/B to include a post-petition claim against Energy in the amount of $35,000.00 (dkt. #75 and 76). Energy reaffirmed its opposition on April 5, 2021 (dkt. #79). Debtor again amended schedule A/B on May 10, 2021, to clarify the date of the contract with Energy, that is, September 10, 2018 (dkt. #91). Debtor filed a response on June 28, 2021, alleging, *inter alia*, that Debtor's relationship with Energy was perfected after the insurance claim with Universal was settled, and that the contracted services were never completed (dkt. #99). Debtor also details what he considers a "gross mischaracterization" of the facts of the case. Debtor moved to strike Energy's opposition (dkt. #100), for sanctions against Energy and its counsel under Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927 and 11 U.S.C. § 105(a) (dkt. #101), and for sanctions against Energy for violations of the automatic stay (dkt. #102).

A status conference was held on July 27, 2021, and the parties were granted time to exchange documentation and engage in settlement negotiations (dkt. #114). On August 26, 2021, Energy informed of ongoing negotiations and requested time to oppose the pending motions filed by Debtor (dkt. #119). On September 27, 2021, Energy filed its responses (dkt. #124,125, and 126). Energy opposes the consideration of any document in Spanish and reasserts its argument

that Debtor failed to inform the court of the contract with Energy and the proceedings with DACO. Energy also states that it was not given notice of the filing of the petition nor the applicability of the automatic stay provisions. It is now, after the objections filed by Energy, that Debtor discloses "vaguely" the contract with Energy. Energy also denies any violation to the automatic stay provisions.

On July 7, 2022, Debtor, in response to an order to show cause entered on June 23, 2022 (dkt. #136), moved the court to temporarily stay the pending contested matters as Debtor was experiencing serious health issues and that "a substantial part of the controversy surrounding the contested matters that are pending before this court is currently under the consideration of" DACO (dkt. #138). The request was granted, and Debtor was ordered to file a status report within six months (dkt. #139). Since no report was filed, on January 13, 2023, the court entered an order to show cause to Debtor (dkt. #143). The Debtor answered the order and requested that the temporary stay be extended as the DACO resolution is expected in around ninety days (dkt. #145). The request was granted (dkt. #146). On April 3, 2023, Debtor again moved to extend the temporary stay (dkt. #148) and the court granted the request (dkt. #149). A final extension was requested on October 3, 2023 (dkt. #152) and the court granted the same (dkt. #153).

On October 13, 2023, Debtor moved the court to end the temporary stay and allow Debtor to file a motion for summary judgment within forty-five (45) days (dkt. #155). On October 30, 2023, Energy filed an opposition to Debtor's request, a motion to dismiss, and a request to schedule evidentiary hearing (dkt. #157), which Debtor moved to strike (dkt. #158). The court granted Debtor's request to end the temporary stay on November 2, 2023 (dkt. #161).

On November 1, 2023, Energy filed an amended opposition to Debtor's request to move for summary judgment, a motion to dismiss, and a request for an evidentiary hearing (dkt. #159). The same includes relevant statements and admissions, which the court proceeds to now summarize.

DACO determined that Energy is not entitled to be paid for services rendered to Debtor. Also, the status of the case warrants that the instant contested matter be dismissed as the plan has

-5-

been completed, a discharge will be entered, and the estate property will revert to Debtor. Energy requests that attorney's fees be awarded against Debtor and that an evidentiary hearing be scheduled to finalize all pending matters. Energy proposes the following: "58. After analyzing DACO's resolution, EH is willing to pay the determined $1,500 in damages, $1,800.00 in attorney fees, and an additional sum of $950.00 to cover for the expert witnesses' report once DACO settles EH's PR Rule 49.2 motion yet to be filed. 59. That the sum of these amounts total $12,238.00 which EH is willing to pay once DACO settles EH's PR Rule 49.2 motion yet to be filed." dkt. #159. P. 25, ¶¶ 58-59. The Debtor opposed the same on January 8, 2024 (dkt. #185).

On December 4, 2023, Debtor filed an amended motion for sanctions (dkt. #167). The certified translations to several documents attached as exhibits to the amended motion for sanctions were submitted on December 19, 2023 (dkt. #179). Energy filed its opposition on December 20, 2023, and prayed the court to dismiss Debtor's request for sanctions (dkt. #171). The Clerk entered a notice of corrective action due to incorrect use of event numbers on December 19, 2023 (dkt. #178), and Debtor moved that the opposition be stricken (dkt. #180). On December 20, 2023, Energy refiled its amended motion to strike Debtor's motion for sanctions (dkt. #181). Debtor filed an opposition on February 2, 2024 (dkt. #202).

On January 8, 2024, Debtor filed a motion for summary judgment for the disbursement of consigned funds (dkt. #189), concluding and requesting as follows:

> The undisputed facts in this case unequivocally establish that the insurance claim funds that were consigned with the Court by Universal (Doc. #64) not only belong to Debtor but the only party that objected to Debtor's request for the withdrawal and disbursement of these funds for his benefit (Energy Homes) has no right to payment from Debtor nor any legal claim over the insurance claim funds. This is the case since the post-petition construction contract that once existed between Debtor and Energy has been terminated pursuant to a final and non-appealable state court judgment. See SUMF 33, based on p. 16-17 & 21, Exhibit #3, Judgment of PR Court of Appeals. Additionally, far from owing Energy any amounts, this construction company, who at the time that it entered into the construction contract with Debtor maintained an illegal construction services operation, owes Debtor $12,238.00. See SUMF 33 & 35, based on p. 16-17 & 21, Exhibit #3, Judgment of PR Court of Appeals.

It is well known that under the full faith and credit statute, a state-court judgment has the same preclusive effect in bankruptcy court as in that state's court. 28 U.S.C. § 1738. Since in the instant case the requirements for collateral estoppel to apply to the State Court Judgment are clearly met, this Honorable Court is required to afford full faith and credit to DACO's judgment in favor of Debtor, as confirmed by the Puerto Rico Court of Appeals. As a result, the State Court Judgment in favor of Debtor is *res judicata* as to all matters litigated and decided by the local forum. Berríos v. Gonzalez–Rosario, *supra*.

In fact, by Energy's own admissions, they have no right to payment from Debtor and/or from the insurance claim funds that are consigned with the Bankruptcy Court. (SUMF 38, based on Energy's judicial admission to this effect, p. 17 (paragraph 2), Energy's Amended opposition and Motion to Dismiss (Doc. #159)). Because such an admission is clear and relates to a statement of fact, it falls squarely under the purview of the judicial admission doctrine, and, as such, is binding and conclusive. See, *e.g.*, Harrington v. City of Nashua, 610 F.3d 24, 31 (1st Cir.2010); Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l. B.V. v. Schreiber, 407 F.3d 34, 45 (2d Cir.2005).

In light of this, the continued retention of Debtor's insurance claim funds not only perpetuates a manifest injustice but also impairs Debtor's ability to begin to perform the repairs that are badly needed on his property. Granting summary judgment aligns with the principles of justice and upholds the integrity of the judicial process by efficiently resolving this matter without the need for a protracted trial or evidentiary hearing. Additionally, the disbursement of the consigned funds that belong to Debtor as requested herein has not only been authorized by Debtor's wife (co-insured party in the Universal policy that is the source if the consigned funds) (SUMF 41, based on Exhibit #6) but the instant motion is being served on the holder of the mortgage on Debtors property (the only other party with a conceivable interest in this matter).

. . .

**WHEREFORE** the Debtor respectfully prays that this Honorable Court enter summary judgment for the disbursement of the insurance claim funds that were consigned with the Clerk of the Court by Universal Insurance Company ($22,610.48) (Doc. #64), and grant Debtor such other and further relief as this Court may deem just and proper. The order to the Clerk of the Court should provide for the disbursement of the consigned funds per the terms of Debtor's Declaration, attached herein (Exhibit #5), as follows:

(a) David Toledo David: $7,936.82, at the following mailing address: Ave. Ponce de León #1311, Suite 500, San Juan PR 00907;

(b) Pablo Rivera Peña (Debtor), $2,066.48, at the mailing address of his attorney of record: PO Box 361844, San Juan, PR 00936; and

(c) Ignacio Garcia Franco (Debtor's counsel), $12,607.18, at his mailing address of record: PO Box 361844, San Juan, PR 00936. See Exhibit #5.

dkt. #189, pp. 13-15.

On January 24, 2024, Energy filed its opposition to the motion for summary judgment, requesting the court to hold the same in abeyance until the other pending motions are adjudicated (dkt. #201).

On February 13, 2024, Debtor renewed his application to withdraw the consigned funds (dkt. #207) and, on March 8, 2024, the court entered an order holding the request in abeyance pending a decision on the pending matters (dkt. #208).

Applicable Law and Discussion

A.     Withdrawal of Consigned Funds

The key issue before the court, irrespective of the manner requested, is whether the court should grant Debtor's request to withdraw the consigned funds, and that the disbursement be made as requested (dkt. #69, 74, 207). At some point there may have been contradictory positions due to the status of the proceedings, but now there are no significant controversies. DACO resolved the complaint in favor of Debtor and the Puerto Rico Court of Appeals confirmed the decision. Energy has no legal right to the funds and must also pay the judgment imposed by DACO. Therefore, since the Puerto Rico Court of Appeals entered judgment in favor of Debtor in case number KLRA202300113 on August 17, 2023, the consigned funds should have been paid as requested by Debtor.

B.     The Automatic Stay

The automatic stay provision is one of the fundamental debtor protections in the Bankruptcy Code. It gives debtors a "breathing spell" from creditors and stops all collection efforts, all harassment, and all foreclosure actions. H.R. Rep. No. 95–595, 95th Cong. 1st Sess. 340–342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840, 6296–97. ICC v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991); In re Smith Corset Shops, Inc., 696 F.2d 971, 977 (1st Cir. 1982). "It allows the debtor to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy." Id., at 977.

-8-

Section 362 of the Bankruptcy Code provides that, upon filing for bankruptcy, a debtor is immediately protected by an automatic stay that prohibits, *inter alia*, the "continuation ... or other action or proceeding against the debtor that was or could have been commenced before the [bankruptcy petition] or to recover a claim against the debtor that arose before the commencement of the case under this title" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case ..." 11 U.S.C. § 362(a)(1) and (6). "This respite enables debtors to resolve their debts in a more orderly fashion and at the same time safeguards their creditors by preventing different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets." Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir.1997) (citations omitted). "Section 362(a)(6) is intended to prevent creditor harassment of the debtor in attempting to collect pre-petition debts. The conduct prohibited ranges from that of an informal nature, such as by telephone contact or by dunning letters, to more formal judicial and administrative proceedings that are also stayed under subsection (a)(1)." Collier on Bankruptcy ¶ 362.03[8][a] (16th ed. 2024).

"The automatic stay imposes on non-debtor parties an affirmative duty of compliance." Whitman–Nieves v. P.R. Fed. Credit Union (In re Whitman–Nieves), 519 B.R. 1, 8 (Bankr. D.P.R. 2014), quoting Otero–Lopez v. Dep't of Treasury of P.R. (In re Otero–Lopez), 492 B.R. 595, 607 (Bankr. D.P.R. 2013). To ensure compliance of the automatic stay, Section 362(k) of the Bankruptcy Code provides the necessary means to redress its violation: "an individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages". 11 U.S.C. § 362(k)(1). "A debtor seeking damages under this section bears the burden of proving by a preponderance of the evidence the following three elements: (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577–578 (1st Cir. BAP 2012), citing In re Panek, 402 B.R. 71, 76 (Bankr. D.Mass. 2009).

-9-

"A willful violation does not require a specific intent to violate the automatic stay." In re Otero, 492 B.R. at 607. "The standard for a willful violation of the automatic stay ... is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortgage Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). "The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." Id. "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Id. "A violation may also be willful if the creditor's original action in violation of the stay occurred without notice of the bankruptcy filing, but it failed to take prompt action to remedy the violation after receipt of notice." Hon. W. Homer Drake, *et al.*, Chapter 13 Practice & Procedure §15:6 (June 2023 Update). Also see In re Abrams, 127 B.R. 239, 243–244 (9th Cir. BAP 1991); In re Combs, 2006 Bankr. LEXIS 3569, 2006 WL 6591825 (Bankr. N.D.Ga. 2006); In re Smith, 180 B.R. 311 (Bankr. N.D.Ga. 1995) (failure to vacate judgment entered post-petition constituted a willful violation of the automatic stay); Commercial Credit Corp. v. Reed, 154 B.R. 471, 476 (E.D.Tex. 1993) ("[A] creditor must act immediately to restore the status quo once it learns that it has violated the stay."); In re Wariner, 16 B.R. 216 (Bankr. N.D.Tex. 1981) ("A creditor has an affirmative duty to return the property and restore the status quo once it learns its actions violated the stay."); In re Miller, 10 B.R. 778 (Bankr. D.Md. 1981) (creditor has an affirmative obligation to return vehicle repossessed post-petition; failure to do so constituted a willful stay violation and supported an award of damages); In re Taylor, 190 B.R. 459, 461 (Bankr. S.D.Fla. 1995) ("once notice was given [to creditor] that the petition relief had been filed, [he] had an affirmative duty to undo the technical violation.").

The facts in this case do not show that Energy engaged in actions to collect monies from Debtor. Energy, albeit without basis after the DACO resolution, engaged in protection of what it believed were its post-petition rights to the consigned funds based on post-petition actions by Debtor. Thus, the court finds that Energy did not violate the automatic stay.

-10-

C.    Motion to Dismiss filed by Energy

Energy moved to dismiss the instant bankruptcy proceeding under Fed. R. Civ. P. 12(f) (dkt. #159), which is not applicable to contested matters, only adversary proceedings. See Fed. R. Bankr. P. 9014(c) and 7012(b). Notwithstanding, the court will consider the same as a response to Debtor's request for sanctions as the same is premised on Fed. R. Bankr. P. 9011 and the allegations made by Debtor's counsel against Energy's counsel. This issue was previously addressed by the court in its civility statements and will not go into further detail as the court assumes its warning, at this juncture, will suffice.

D.    Request for Sanctions

The litigation regarding the withdrawal of consigned funds would have been avoided or at least simplified if Debtor would have engaged in full disclosure of its actions regarding the repair of his home by Energy and the negotiations with Universal. The same can be said if Energy would have disclosed the known facts relative to the controversy in a more specific and truthful manner. Particularly, the status of the DACO complaint in its entirety and its affirmance by the Puerto Rico Court of Appeals on August 17, 2023. Therefore, the court awards as sanctions in favor of Debtor and against Energy in the form of attorney's fees and expenses incurred after August 17, 2023.

E.    Summary Judgment Under Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56, made applicable to adversary proceedings under Fed. R. Bankr. P. 7056, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322-332 (1986); In re Colarusso, 382 F.3d 51 (1st Cir. 2004); Alicea v. Wilkie, 2020 WL 1547064, 2020 U.S. Dist. LEXIS 57213 (D.P.R. 2020).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine dispute as to any material fact or in which only a question of law is involved." Charles A. Wright, Arthur R. Miller, & Mary K. Kane, 10A Federal

Practice and Procedure § 2712 (4th ed., West 2022). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. (footnotes omitted). "[S]ummary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court ... is empowered [only] to determine whether there are issues to be tried." Id. (footnotes omitted). See also Bernier v. Treasury Dep't (In re Bernier), 2022 WL 17096264, at *5, 2022 Bankr. LEXIS 3283, at *17-18 (Bankr. D.P.R. 2022) ("the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.").

"A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008), quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir.1996). See also Andino-Oquendo v. Federal National Mortgage Association, 2023 WL 2245072, at *1, 2023 U.S. Dist. LEXIS 34375, at *2 (D.P.R. 2023), quoting Alicea, 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. A fact is material only if it is determinative of the outcome of the litigation. See Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976); Maymí v. P.R. Ports Auth., 515 F. 3d 20, 25 (1st Cir. 2008); In re Financial Oversight and Management Board for Puerto Rico, 650 B.R. 334, 353 (D.P.R. 2023), quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) ("Material facts are those that 'possess[ ] the capacity to sway the outcome of the litigation under the applicable law,' and there is a genuine factual dispute where an issue 'may reasonably be resolved in favor of either party.' ").

When considering a petition for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party. See Thompson, 522 F.3d at 172, citing Franceschi v. United States VA, 514 F.3d 81, 83 (1st Cir. 2008). The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. See Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991); Alicea, 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. It is essential that the moving party explain its reasons for

concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. See Bias v. Advantage International, Inc., 905 F.2d 1558, 1560–61 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 958 (1990).

To that end, L. Civ. R. 56(b) requires a movant to include a separate, short, and concise statement of material facts and to support each factual assertion with a citation to the evidentiary record. See L. Civ. R. 56(b), (e). "The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment," and "shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." L. Civ. R. 56(e).

The moving party cannot prevail if any essential element of its claim or defense requires trial. See López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. See Celotex, 477 U.S. at 325; Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988). In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. See Kennedy v. Josephthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987); Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions, and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. See Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980). The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. See López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. See Adickes, 398 U.S. at 159.

-13-

DACO determined that Energy is not entitled to be paid for services rendered to Debtor. See *Debtor's Statement of Uncontested Material Facts*, dkt. #189-1, ¶¶ 29, 31; *Certified Translation of Resolution*, dkt. #189-2, pp. 9-10; *Certified Translation of Decision on Reconsideration*, dkt. #189-3. The forgoing determination was later affirmed by the Puerto Rico Court of Appeals. See *Debtor's Statement of Uncontested Material Facts*, dkt. #189-1 ¶ 33; *Certified Translation of Judgment*, dkt. #189-4. In accordance with Fed. R. Civ. P. 56, there is no genuine dispute as to any material fact. Thus, the uncontested facts in Debtor's motion for summary judgment (dkt. #189) and the applicable law justify that the same be granted. Therefore, Debtor's motion for summary judgment is hereby granted. The Clerk shall disburse the consigned funds as follows:

(a)     David Toledo David: $7,936.82, at the following mailing address: Ave. Ponce de León #1311, Suite 500, San Juan PR 00907;

(b)     Pablo Rivera Peña (Debtor), $2,066.48, at the mailing address of his attorney of record: PO Box 361844, San Juan, PR 00936; and

(c)     Ignacio Garcia Franco (Debtor's counsel), $12,607.18, at his mailing address of record: PO Box 361844, San Juan, PR.

The disposition of consigned funds in this case in no way alters the DACO decision or the imposition of sanctions in this order.

Conclusion

In view of the foregoing, the court orders as follows:

1.      The motion filed by Debtor against Energy for violation of the automatic stay (dkt. #102) is denied.

2.      Energy's motion to dismiss (dkt. #159) is hereby denied.

3.      Debtor's motion for sanctions against Energy and its counsel under Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927 and 11 U.S.C. § 105(a) (dkt. #101) is granted in part. The court sanctions Energy to pay Debtor attorney's fees and costs incurred after August 17, 2023.

-14-

4. Summary judgment (dkt. #189) is entered in favor of Debtor. The Clerk shall disburse the consigned funds as follows:

(a) David Toledo David: $7,936.82, at the following mailing address: Ave. Ponce de León #1311, Suite 500, San Juan PR 00907;

(b) Pablo Rivera Peña (Debtor), $2,066.48, at the mailing address of his attorney of record: PO Box 361844, San Juan, PR 00936; and

(c) Ignacio Garcia Franco (Debtor's counsel), $12,607.18, at his mailing address of record: PO Box 361844, San Juan, PR.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of April 2024.

_____
Enrique S. Lamoutte
United States Bankruptcy Judge

-15-